﻿Citation Nr: AXXXXXXXX
Decision Date: 05/14/19 Archive Date: 05/13/19

DOCKET NO. 181206-1161
DATE: May 14, 2019

ORDER

The change in the assignment of the effective date for service connection for scars associated with the status post left knee replacement from August 13, 2013 to October 1, 2014, was not proper; the effective date of August 13, 2013 is reinstated.

New and relevant evidence has been received with respect to the previously denied service-connection claim for ulcerative colitis.

New and relevant evidence has not been received with respect to the previously denied service-connection claim for a right ankle disorder; the claim is not readjudicated.

Service connection for posttraumatic stress disorder (PTSD) is granted.

Service connection for left hip disorder, to include as secondary to service-connected left knee disability, is denied.

Service connection for prostate cancer is denied.

An effective date of June 20, 2013, but no earlier, for an acquired psychiatric disability other than PTSD is granted.

The appeal for an effective date earlier than June 20, 2013 for a low back disability is denied.

The appeal for an effective date earlier than June 20, 2013 for right lower extremity radiculopathy is denied.

A 60 percent disability rating, but no higher, for left knee status post left knee replacement, from October 1, 2014 is granted.

The appeal for an initial, compensable rating for scarring associated with status post left knee surgery is denied.

An initial 40 percent disability rating, but no higher, for lumbar degenerative disc disease, is granted subject to the laws and regulations governing payment of monetary benefits.

The appeal for an initial rating greater than 10 percent for right lower extremity radiculopathy is denied.

REMANDED

The appeal for service connection for residuals of rhinoplasty is remanded. 

The appeal for service connection for ulcerative colitis is remanded. 

The appeal for a rating greater than 50 percent for an acquired psychiatric disorder other than PTSD is remanded.

The appeal for a total disability rating due to individual unemployability (TDIU) prior to April 6, 2018 is remanded.

FINDINGS OF FACT

1. The finding of clear and unmistakable error (CUE) in the establishment of the effective date for scars of the left knee in the June 2014 rating decision was not valid; the effective date of August 13, 2013 is reinstated.

2. New evidence was received after the January 2003 denial that is relevant to the issue of entitlement to service connection for ulcerative colitis.

3. New and relevant evidence has not been received to prove or disprove the claim for service connection for a right ankle disorder.

4. The evidence is at least in equipoise that the Veteran has a current diagnosis of PTSD related to a credible in-service stressor.

5. There is no current diagnosis of a left hip disorder and the Veteran’s left hip pain does not reach the level of functional impairment of earning capacity.

6. The evidence is against a finding of a current diagnosis of prostate cancer at any point pertinent to the claim.

7. The Veteran’s prior claim of service connection for dysthymia was denied in a March 2003 rating decision. The Veteran did not appeal the decision.

8. After the final March 2003 decision, the Veteran did not file a formal or informal claim for service connection for an acquired psychiatric disorder until June 20, 2013.

9. The Veteran’s prior claim of service connection for a back disability was denied in a January 2003 rating decision. The Veteran did not appeal the decision.

10. After the final January 2003 decision, the Veteran did not file a formal or informal claim for service connection for a low back disorder (or accompanying right lower extremity radiculopathy) until June 20, 2013.

11. The evidence supports a finding that the Veteran’s left knee disability, status post knee replacement, has been manifested by chronic residuals of severe painful motion or weakness from the total knee joint replacement for the entire period since October 1, 2014. 

12. For the entire period on appeal, the Veteran’s scarring associated with the left knee status post knee replacement was not painful, deep or unstable, and did not measure at least 39 sq. cm. 

13. For the entire period on appeal, the Veteran’s lumbar spine disability has been manifested by forward flexion of the thoracolumbar spine no worse than 25 degrees; ankylosis, intervertebral disc syndrome and physician-prescribed bed rest have not been shown at any time.

14. For the entire period on appeal, the Veteran’s lumbar spine disability was productive of no more than mild right lower extremity radiculopathy. 

CONCLUSIONS OF LAW

1. There was no clear and unmistakable evidence (CUE) in the June 2014 rating decision regarding the establishment of the effective date for scars of the left knee and the effective date of August 13, 2013 is reinstated. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.1, 3.155, 3.400 (2018).

2. The criteria for readjudicating the claim for service connection for ulcerative colitis are met. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501).

3. New and relevant evidence has not been received to support the claim for service connection for a right ankle disorder. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501).

4. The criteria for service connection for posttraumatic stress disorder (PTSD) are met. 38 U.S.C. §§ 1110, 1031, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304(f) (2018).

5. The criteria for service connection for left hip disorder, to include as secondary to service-connected left knee disability, are not met. 38 U.S.C. §§ 1110, 1031, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2018).

6. The criteria for service connection for prostate cancer are not met. 38 U.S.C. §§ 1110, 1031, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303 (2018).

7. The criteria for an effective date of June 20, 2013, but no earlier, for the grant of service connection for an acquired psychiatric disorder other than PTSD, are met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.1, 3.155, 3.400 (2018). 

8. The criteria for an effective date earlier than June 20, 2013 for a back disability, are not met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.1, 3.155, 3.400 (2018).

9. The criteria for an effective date earlier than June 20, 2013 for a right lower extremity disability, are not met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.1, 3.155, 3.400 (2018).

10. The criteria for a 60 percent disability rating, but no higher, for left knee status post left knee replacement, from October 1, 2014 are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, DCs 5055, 5256-5263 (2018). 

11. The criteria for an initial, compensable rating for scarring associated with status post left knee surgery are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.118, Diagnostic Codes 7800, 7801, 7802, 7804, 7805 (2018).

12. The criteria for an initial rating of 40 percent, but no higher, for lumbar degenerative disc disease are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5242 (2018).

13. The criteria for an initial rating greater than 10 percent for right lower extremity radiculopathy are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71, 4.71a, 4.124, 4.124a, Diagnostic Codes 5242, 8520 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from June 1967 to October 1970.

The Board notes that the rating decision on appeal regarding the issues of status post knee replacement and accompanying scarring, left hip disorder, residuals of rhinoplasty, ulcerative colitis, right ankle, and low back was issued in June 2014. The issue on appeal regarding the appropriate effective date for service connection for an acquired psychiatric disorder other than PTSD, arises from the Veteran’s timely disagreement with the effective date assigned in the March 2017 rating decision.

In January 2018, the Veteran elected to have all eligible appeals reviewed under the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. The AOJ issued its Higher Level Review (HLR) decision in March 2018. The March 2018 decision addressed all of the aforementioned issues, including a grant of service connection for the lumbar spine degenerative disc disease. 

The Veteran timely appealed the March 2018 HLR decision to the Board and requested an “evidence submission” appeal to the Board. See December 2018 RAMP selection form. The HLR decision concerning service connection for PTSD was issued in November 2018. The Veteran similarly elected the modernized review system in December 2018 and selected the “evidence submission” appeal to the Board. The Board may consider evidence through the date of the election into the RAMP system as well as any evidence received during the 90 day period following submission of the December 2018 selection forms.

The new and material evidence issues regarding service connection for residuals of rhinoplasty, right ankle, and ulcerative colitis, have been recharacterized to reflect the applicable evidentiary standard. 84 Fed. Reg. 138, 172, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. §§ 3.2501(a)(1), 19.2).

CUE

In a June 2014 rating decision, the AOJ granted service connection for a left knee scar associated with left knee replacement, and assigned an effective date of August 13, 2013. The AOJ also assigned an initial, noncompensable rating. In the March 2018 Higher Level Review, the AOJ determined that there was CUE in the June 2014 rating decision and that the correct effective date for the scarring of the left knee was October 1, 2014. The present appeal arises from the timely appeal of the March 2018 HLR decision which found CUE in the June 2014 rating decision regarding the assignment of the August 13, 2013 effective date. 

Whether there was CUE in the establishment of the effective date for scarring of the left knee. 

The Veteran has not submitted specific argument concerning the CUE decision but because the Veteran appealed all determinations of the March 2018 decision, the Board interprets the appeal as an assertion that there was not CUE in the assignment of the effective date assigned in the June 2014 rating decision and that the effective date of August 13, 2013 should be reinstated. In order for there to have been CUE in the June 2014 rating decision, the AOJ must have in fact committed clear error.

The regulation regarding effective dates for increased rating at the time of the June 2014 rating decision provided that the effective date for an increased rating should be the earliest date that it is factually ascertainable based on all evidence of record that an increase in disability had occurred if a complete claim or intent to file a claim is received within 1 year from such date, otherwise the date of receipt of the claim. 38 C.F.R. § 3.400(o)(2). The Veteran filed the claim for a temporary total rating for his left knee disability based on left knee replacement surgery, in September 2013. The Veteran had left knee replacement surgery on August 13, 2013. The AOJ initially assigned a temporary total rating for the left knee status post replacement, effective from August 13, 2013 through September 30, 2014, and 30 percent disabling from October 1, 2014. The AOJ also assigned a noncompensable rating for scarring associated with the same, effective August 13, 2013. As discussed above, in the March 2018 HLR, the AOJ found CUE in the June 2014 decision and assigned a new effective date of October 1, 2014, for the left knee scar. 

The AOJ did not explain the basis for the finding of CUE. Assuming that the CUE was based on the temporary 100 percent disability rating assigned for the left knee replacement surgery, the Board notes that the schedular rating for the 100 percent rating for the Veteran’s knee replacement for one year following surgery, does not expressly state that it is intended to encompass scarring associated with the surgery. Because the Veteran’s left knee replacement surgery took place on August 13, 2013, and that date was within the one-year period prior to the September 2013 claim, the Board finds that it was proper to grant service connection for scarring associated with the surgery as of the date of the surgery. Therefore, there was no CUE in the assignment of the effective date of August 13, 2013 for scarring. Thus, the effective date of August 13, 2013 for left knee scarring should be reinstated. 

Claims to readjudicate

As noted above, the new and material evidence issues regarding service connection for disorders of the right ankle, ulcerative colitis, and status post rhinoplasty have been recharacterized to reflect the applicable evidentiary standard. 84 Fed. Reg. 138, 172, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. §§ 3.2501(a)(1), 19.2).

VA will readjudicate a claim if new and relevant evidence is presented or secured. 84 Fed. Reg. 138, 169 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.156(d)). “Relevant evidence is evidence that “tends to prove or disprove a matter in issue.” VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). As the statutory definition of “relevant” does not require that the evidence relate to an unestablished fact necessary to substantiate the claim or raise a reasonable possibility of substantiating the claim; “new and relevant” evidence is a lower standard than the “new and material” evidence standard. 

1. Whether new and relevant evidence has been received to warrant readjudication of the claim for service connection for ulcerative colitis.

In the present case, the AOJ, by a decision entered in January 2003, denied the Veteran’s claim for service connection for ulcerative colitis on grounds that it was not related to service or caused or aggravated by service-connected disability, to include medication taken for service-connected left knee disability. The Veteran did not appeal, no new and material evidence was received within a year of the rating decision, and the decision became final. 38 C.F.R. § 3.156(b). Accordingly, the claim may now be readjudicated on the merits only if new and relevant evidence has been received since the time of the prior adjudication. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501).

In the March 2018 HLR, the AOJ noted that there were no favorable findings with respect to this claim, and more specifically found that no new and relevant evidence had been received warranting readjudication.

In February 2019, within the appropriate period for evidence submission under the AMA, the Veteran’s attorney submitted a VA treatment record dated in July 1999 that was not reviewed at the time of the prior March 2003 rating decision. Indeed, the March 2003 rating decision indicates that only treatment records from January 2000 to September 2002 were reviewed. The July 1999 treatment record indicates that the Veteran had ulcerative colitis since October 1997. The record notes the Veteran’s bowel habits and lists all of the Veteran’s then-current assessments, including degenerative joint disease of the left knee. The record indicates that medications were reviewed but does not list the specific medications. The Board finds that the record is relevant in light of the Veteran’s assertion that his ulcerative colitis worsened later, when he was prescribed a specific pain reliever for his left knee. Thus, the July 1999 record may prove or disprove the Veteran’s assertion that his ulcerative colitis is secondary to medication for his left knee disability. Readjudication of the claim is warranted.

2. Whether new and relevant evidence has been received to warrant readjudication of the claim for service connection for a right ankle disorder. 

In the present case, the AOJ, by a decision entered in January 2003, denied the Veteran’s claim for service connection for a right ankle disorder on grounds that it was not incurred in or aggravated by service. The Veteran did not appeal, no new and material evidence was received within a year of the rating decision, and the decision became final. 38 C.F.R. § 3.156 (b). Accordingly, the claim may now be readjudicated on the merits only if new and relevant evidence has been received since the time of the prior adjudication. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501).

In the March 2018 HLR, the AOJ noted that there were no favorable findings with respect to this claim, and more specifically found that no new and relevant evidence had been received warranting readjudication.

Although new VA treatment records have been added to the record since the January 2003 rating decision, the records are not relevant to the question of whether the Veteran’s right ankle disorder was related to service or service-connected disability. In this regard, the records do not tend to prove or disprove the assertion that the Veteran’s right ankle disorder is related to service or service-connected disability. As the new evidence is not relevant, the claim is not readjudicated.

Service connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Direct service connection may not be granted without evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disease or injury. 38 U.S.C. § 1112; 38 C.F.R. § 3.304. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Additionally, for Veterans who served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including arthritis, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). The use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Under any theory of entitlement, service connection may only be granted for a current disability; when a claimed condition is not shown, there may be no grant of service connection. See 38 U.S.C. § 1110 (2014); Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability). “In the absence of proof of a present disability there can be no valid claim.” See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The current disability requirement for a service connection claim is satisfied if the claimant has a disability at the time the claim is filed or during the pendency of that claim. See McClain v. Nicholson, 21 Vet. App. 319 (2007). Additionally, in Romanowsky v. Shinseki, 26 Vet. App. 289 (2013), the Court held that when the record contains a recent diagnosis of disability prior to a Veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency.

Additionally, if a current disability is not specifically diagnosed, service connection may also be warranted for pain that amounts to functional impairment of earning capacity. In Saunders v. Wilkie, 886 F.3d 1356, 1363-64 (Fed. Cir. 2018), the Federal Circuit addressed “the legal issue [of] whether pain without an accompanying pathology can constitute a “disability” under [38 U.S.C.] § 1110.” The Federal Circuit held that the Veterans Court erred “as a matter of law in holding that pain alone, without an accompanying diagnosis or identifiable condition, cannot constitute a ‘disability’ under [38 U.S.C.] § 1110, because pain in the absence of a presently-diagnosed condition can cause functional impairment.” Id. 

The Federal Circuit “conclude[d] that pain is an impairment because it diminishes the body’s ability to function, and that pain need not be diagnosed as connected to a current underlying condition to function as an impairment.” Id. Further, the Federal Circuit held that “[w]e do not hold that a veteran could demonstrate service connection simply by asserting subjective pain to establish a disability, the veteran’s pain must amount to a functional impairment. To establish the presence of a disability, a veteran will need to show that [] pain reaches the level of a functional impairment of earning capacity.” Id.

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C. § 7104 (a) (2012); Baldwin v. West, 13 Vet. App. 1 (1999); see 38 C.F.R. § 3.303 (a). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

1. Entitlement to service connection for PTSD

The Veteran is already in receipt of service connection for a “other specified trauma and stressor related disorder,” but he asserts that he is also entitled to service connection for PTSD. To date, the AOJ has found that the evidence does not demonstrate a current diagnosis of PTSD. 

In addition to the foregoing laws and regulations, service connection for PTSD requires medical evidence establishing a diagnosis of the disorder in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptomatology and the claimed in-service stressor(s); and credible supporting evidence that the claimed in-service stressor(s) actually occurred. 38 C.F.R. § 3.304(f).

For the following reasons, the Board finds that the evidence is at least in equipoise that the Veteran has PTSD. 

The Veteran was provided with a VA examination in July 2016 and the examiner determined that the Veteran’s psychiatric symptoms met the DSM-5 criteria for “other specified trauma and stressor related disorder” secondary to chronic pain from service-connected knee issues as well as the loss of the Veteran’s wife. The Veteran was provided with another VA examination in February 2017 and that examiner opined that the Veteran’s symptoms did not meet the diagnostic criteria for PTSD under DSM-5 criteria.

The Veteran submitted a statement from a private psychologist, Dr. E.L., indicating that he had a diagnosis of PTSD that met the DSM-5 criteria. See February 2019 letter from Dr. E.L. Dr. E.L. opined that the Veteran’s PTSD was due to the Veteran’s plane crash recovery mission during active duty. The Board places as much probative value on Dr. E.L.’s opinion as that of the July 2016 VA examiner, as Dr. E.L. also reviewed the pertinent treatment records and applied the DSM-5 criteria. The Board resolves doubt and finds that the Veteran has a current diagnosis of PTSD. 

The remaining question is whether the Veteran’s PTSD is related to service. The Board finds there is credible evidence that the Veteran’s in-service stressor occurred. The Veteran asserts that he experienced an in-service stressor when two friendly aircraft crashed, killing crew members, and the Veteran assisted in cleaning up the wreckage.

The Board finds the Veteran’s statements that he assisted in cleaning up the wreckage, to be credible. He was stationed in the vicinity of the crash site (see DD-214) and November 2018 correspondence from U.S. Air Force indicates that service members from the installation where the Veteran was stationed were responsible for recovery of the wreckage and removal of the victims. The Board has no reason to doubt the veracity of the Veteran’s statements particularly in light of the observation from Dr. E.L. that the Veteran was not malingering or exaggerating in his report of his involvement in the clean up mission. 

Dr. E.L. reported that as a trained psychologist, he is attuned to malingering and exaggeration and that he paid close attention to the Veteran during the interviews in order to ascertain whether the Veteran was malingering or exaggerating. Dr. E.L. reported that despite such scrutiny, he found no suggestion of malingering or exaggeration on the part of the Veteran. The Board places a high probative value on Dr. E.L.’s observations regarding the veracity of the Veteran’s statements. 

The Board also finds it significant that neither of the VA examiners indicated any that the Veteran was malingering or exaggerating his symptoms. 

Based on the foregoing, the Board finds that the evidence is at least in equipoise as to whether the Veteran has a current diagnosis of PTSD related to the credible in-service stressor. Thus, service connection for PTSD is warranted. 

2. Entitlement to service connection for a left hip disorder

Here, the claim fails because there is no indication that the Veteran has a current left hip disability. The Veteran was provided with a VA examination in December 2012. The examiner noted that the Veteran had intermittent pain but determined that there was no objective evidence of chronic disability. The Veteran was provided with another VA examination in May 2014. At that time, the examiner noted that the Veteran had a normal examination and no diagnosable left hip condition. 

The Board has considered the evidence in light of Saunders, supra but finds that the claim fails. In this regard, although the Veteran has intermittent pain, there is no indication that the Veteran’s pain limits his motion of the left hip or otherwise rises to the level of impairment to a compensable degree. In other words, his pain does not reach the level of causing functional impairment.

During the May 2014 VA examination, the Veteran reported that when he bore weight, he felt as if something was moving and popping. The Veteran denied any flare-ups that impacted the function of the hip or thigh. Range of motion testing was normal, and the examiner noted that there was no objective evidence of painful motion. The Veteran was able to perform repetitive testing and there was no post-test abduction lost beyond 10 degrees or such that the Veteran could not cross his legs. Similarly, there was no post-test rotation limited such that the Veteran could not toe-out more than 15 degrees. The Veteran denied using any assistive devices as a normal mode of locomotion. The Veteran’s hip flexion, abduction and extension all demonstrated normal muscle strength. He denied any localized tenderness or pain to palpation for joints or soft tissue of the hip. 

VA treatment records do not indicate worse condition than that shown by the May 2014 VA examination report. 

The Board acknowledges the Veteran’s belief that he is entitled to service connection for left hip pain; however, as his pain has not been shown to have a current diagnosis and does not reach the level of causing functional impairment, service connection is not warranted. 

3. Entitlement to service connection for prostate cancer 

VA and private treatment records indicate that the Veteran has had an enlarged prostate and elevated PSA, but prostate cancer has not been diagnosed. See e.g. November 2015 private record and March 2018 VA treatment record. To the contrary, July 2016 VA blood test results specifically note that although the Veteran’s PSA was elevated, it was not suspicious for cancer. The remaining VA and private treatment records have not demonstrated otherwise. 

The Board acknowledges the Veteran’s belief that he has prostate cancer due to service. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, diagnosis of prostate cancer, falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). The Veteran has not been shown to have the requisite knowledge to diagnose prostate cancer. Therefore, the Board places no probative value on his diagnosis of the same. 

As there is no probative evidence in favor of a finding of a current diagnosis of prostate cancer, service connection service connection for prostate cancer is not warranted.

Earlier Effective Dates

Generally, if a claim is received within one year after separation from service, the effective date shall be “day following separation from active service.” 38 C.F.R. § 3.400(b)(2). Otherwise, the effective date shall be date of claim or date entitlement arose, whichever is later. Id. The effective date for a reopened claim, after a final disallowance, shall be the date of receipt of the new claim or date entitlement arose, whichever is later. 38 C.F.R. § 3.400(q)(2), (r).

Effective March 24, 2015, VA amended its regulations to require that all claims governed by VA’s adjudication regulations be filed on a standard form. See 79 Fed. Reg. 57660 (Sept. 25, 2014). The amendments implement the concept of an intent to file a claim for benefits, which operates similarly to the informal claim process, but requires that the submission establishing a claimant’s effective date of benefits must be received in one of three specified formats. The amendments also eliminate the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims to reopen under 38 C.F.R. § 3.157. See 79 Fed. Reg. 57,660 (Sept. 25, 2014) (now codified at 38 C.F.R. §§ 3.1 (p), 3.151, 3.155). The amendments apply only to claims filed on or after March 24, 2015. Because the Veteran’s claim to reopen the claim for service connection for diabetes mellitus was submitted prior to that date, the former regulations apply, as provided below.

The term “claim” or “application” means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p). Any communication or action indicating an intent to apply for one or more benefits under laws administered by VA from a claimant may be considered an informal claim. Such informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. 38 C.F.R. § 3.155(a). To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129, 134 (1992).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

1. Entitlement to an effective date earlier than February 11, 2015 for the award of service connection for an acquired psychiatric disability, other than PTSD

In this case, the Veteran initially claimed entitlement to service connection for dysthymia in September 2002. The claim was denied in March 2003. The Veteran did not appeal and no new or material evidence was received within one year of the decision. Thus, the decision became final. See 38 C.F.R. § 3.156(b). 

The Veteran next filed a request to reopen claims for service connection in June 2013. Although the Veteran did not specify which claims he requested to reopen, the AOJ interpreted the request as pertaining to several previously denied claims for service connection, including an acquired psychiatric disorder. The request to reopen was denied in June 2014. The Veteran sought reconsideration of the decision and the request was again denied in July 2014. The Veteran filed a timely notice of disagreement in December 2014. Following additional development, in a March 2017 rating decision, the AOJ reopened the claim and granted service connection for “other specified trauma and stressor related disorder” effective October 27, 2016. The present appeal arises from the Veteran’s timely disagreement with the effective date assigned in the March 2017 rating decision. 

The Veteran opted into the VA RAMP program in January 2018 and requested a higher level review of the claim. In March 2018, the AOJ conducted its higher level of review and increased the initial rating to 50 percent and assigned an earlier effective date of February 11, 2015. The AOJ explained that February 11, 2015 was the date of the first diagnosed psychiatric condition. The Veteran appealed the March 2018 higher level review to the Board. See December 2018 RAMP selection form. 

As discussed above, in a case to reopen a claim for service connection, the appropriate effective date for service connection is the date of the request to reopen the claim, or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400 (q)(2), (r). For the following reasons, the Board resolves doubt and finds that the appropriate effective date is June 20, 2013, the date of the request to reopen the claim for service connection. 

In this case, the evidence includes VA treatment records documenting an Axis I diagnosis of dysthymia in May 2002. Subsequent records dated closer in time to the June 2013 claim include a July 2012 VA treatment record which noted “anxiety disorder” in the active problem list. Indeed, the July 2016 VA examiner cited VA treatment records dated in 2002, 2009 and 2010 regarding the Veteran’s anxiety and prescribed medication for the same. Resolving doubt in favor of the Veteran, the Board finds that the Veteran has had a current psychiatric disability for the entire period since he filed his request to reopen previously denied claim for service connection, on June 20, 2013.

Therefore, the appropriate effective date is the date of the request to reopen the claim for service connection – June 20, 2013. See 38 C.F.R. 3.400(o). An earlier date is not warranted as the Veteran’s prior claim for service connection for a psychiatric disorder was denied in March 2003 and that decision became final.

2. Entitlement to effective dates earlier than June 20, 2013 for back and right lower extremity disabilities 

Service connection for the Veteran’s right lower extremity disability was granted as a separate compensable rating for radiculopathy associated with the low back disorder. Service connection for the right lower extremity disability was not based on a separate claim for benefits. Therefore, the date of the claim for the low back is also used as the date of the claim for the right lower extremity. 

The Veteran initially claimed service connection for the low back in May 2001. The claim was denied in January 2003. The Veteran did not appeal and no new or material evidence was received within one year of the decision. Thus, the decision became final. See 38 C.F.R. § 3.156(b). 

The Veteran next filed a request to reopen claims for service connection on June 20, 2013. As noted above, the Veteran did not specify which claims he requested to reopen and the AOJ interpreted the request as being in reference to several previously denied claims for service connection, including a claim for service connection for a low back disorder. The AOJ declined to reopen the claim in June 2014 but following a timely notice of disagreement, the AOJ eventually granted service connection in the March 2018 HLR. 

The currently-assigned effective date of June 20, 2013 for the low back and right lower extremity disabilities, is the date of the claim to reopen. As discussed above, in a case to reopen a claim for service connection, the appropriate effective date for service connection is the date of the request to reopen the claim, or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400(q)(2), (r). Thus, the earliest possible date for service connection for the low back and right lower extremity disorders, is the currently-assigned effective date of June 20, 2013 – the date of the request to reopen the claim for service connection. See 38 C.F.R. 3.400(o). 

An earlier date is not warranted as the Veteran’s prior claim for service connection for a low back disorder was denied in January 2003 and became final. No additional request to reopen was received prior to the June 20, 2013 request. For these reasons, the appeal for effective dates earlier than June 20, 2013 for service connection for the low back and right lower extremity disabilities, must be denied. 

Increased ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3.

A veteran’s entire history is to be considered when making disability evaluations. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation has already been established and increase in disability rating is at issue, present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Thus, although the Board has thoroughly reviewed all evidence of record, the more critical evidence consists of the evidence generated during the appeal period. Further, the Board must evaluate the medical evidence of record since the filing of the claim for increased rating and consider the appropriateness of a “staged rating” (i.e., assignment of different ratings for distinct periods of time, based on the facts). See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability evaluations are determined by the application of the facts presented to VA’s Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Although all the evidence has been reviewed, only the most relevant and salient evidence is discussed below. See Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000) (holding that the Board must review the entire record but does not have to discuss each piece of evidence).

1. Entitlement to a rating greater than 30 percent for left knee replacement from October 1, 2014 to January 28, 2015, and greater than 60 percent thereafter. 

The Veteran filed a claim for a temporary total rating for his left knee disability, in September 2013 following his left knee replacement surgery in August 2013. The AOJ rated the status post left knee replacement 100 percent disabling from August 13, 2013 (the date of the knee replacement surgery) through September 30, 2014. The AOJ assigned a 30 percent disability rating from October 1, 2014 and increased the rating to 60 percent, effective January 29, 2015. See March 2018 HLR. The present appeal arises from the Veteran’s appeal to the Board following the March 2018 HLR. 

The Veteran was provided a VA examination for the left knee in January 2015. The AOJ granted the increased rating to 60 percent based on the findings in the examination report regarding chronic residuals of severe painful motion or weakness from the total knee joint replacement. The AOJ also specifically cited a March 2015 report from a private physician, Dr. J.S., in reaching the favorable finding that the Veteran had chronic residuals of severe painful motion or weakness from the total knee joint replacement from January 2015. 

Resolving doubt in the Veteran’s favor, the Board finds that the Veteran’s chronic residuals of severe painful motion and weakness were present for the entire period after October 1, 2014. In this regard, VA treatment records dated in August 2014 include the Veteran’s report that his left knee still hurt and that it had recently given out in the bathroom, causing him to fall. Subsequent records dated in October and November 2014 indicate that the left knee pain was substantially the same as it was in August and had not improved since that time. See e.g. October 2014 and November 2014 VA treatment records. Thus, the Board resolves doubt and finds that the Veteran’s left knee disability was in substantially the same condition for the entire period from October 1, 2014 (the day after his 13 months of temporary total rating). 

The 60 percent disability rating is the highest schedular rating allowable following the one-year temporary total rating after implantation of prosthesis under Diagnostic Code 5055. As such, a rating greater than 60 percent is not warranted at any time pertinent to the appeal.

2. Entitlement to an initial, compensable rating for left knee scar associated with the left knee replacement. 

The March 2018 decision continued an initial, noncompensable rating for left knee scars in its discussion regarding CUE in the effective date for the service connection of the same. The Veteran appealed “all findings” in the March 2018 Higher Level Review. See January 2019 correspondence. Therefore, the Board interprets the Veteran’s disagreement to apply to the continuation of the noncompensable rating. 

Under rating criteria in effect prior to August 13, 2018, a compensable rating was warranted under Diagnostic Code 7804 when there is at least one scar that is painful or unstable. A compensable rating was warranted under Diagnostic Code 7801 for scars not of the head, face, or neck that are deep and nonlinear with a total area equal to or greater than 39 square centimeters. A compensable rating was also warranted under Diagnostic Code 7802 for a scar not of the head, face, or neck that is superficial and nonlinear with a total area equal to or greater than 929 square centimeters. Disabling effects not considered under the other scar codes were to separately rated, as per Diagnostic Code 7805.

Amendments were made to the criteria for rating the skin, effective August 13, 2018. See 83 Fed. Reg. 32, 592 (July 13, 2018). The amendments did not substantially change the criteria for rating scars under Diagnostic Codes 7804 or 7805. With regard to Diagnostic Codes 7801 and 7802, the terms deep, nonlinear, and superficial, were replaced with “underlying soft tissue damage.” The revisions also divided the previously referenced body parts into various zones of the body and indicated that separate evaluations may be assigned for each affected zone under Diagnostic Codes 7801 and 7802. As this Veteran’s appeal was pending at the time of the regulation change, the Board has considered whether higher ratings may be warranted under the former criteria at any time during the period under review, and under the current criteria at any time from August 13, 2018 to the present day.

The evidence of record in this case demonstrates that the Veteran had one surgical scar on his left lower extremity on the lateral side of the left knee, above and below. See January 2015 VA examination report. The January 2015 VA examiner measured the scar and noted it to be 19 centimeters long by 0.6 centimeters wide and also noted that it was not painful or unstable. 

VA treatment records and lay statements do not indicate that the scar has been painful, deep or unstable at any time. There is no indication of underlying soft tissue damage, nor is there evidence that the Veteran’s scar is large enough to warrant a compensable rating based on its size. As such, the Board finds that an initial, compensable rating for the scar is not warranted under both the former and current rating criteria.

In reaching this conclusion, the Board acknowledges the Veteran’s belief that he is entitled to a higher rating for scarring associated with the left knee replacement surgery; however, the Veteran’s statements are outweighed by the competent and credible medical evidence that evaluates the true extent of impairment due to scars based on objective data coupled with the lay complaints.

Based on the foregoing, a compensable rating for scarring associated with left knee replacement, is not warranted. 

3. An initial rating greater than 20 percent for lumbar degenerative disc disease

In the March 2018 HLR, the AOJ granted entitlement to service connection for the Veteran’s back disability and assigned a 20 percent disability rating based on forward flexion of the spine being greater than 30 degrees but not greater than 60 degrees. The AOJ identified favorable findings including the November 2017 private medical opinion from Dr. D.M. which related the Veteran’s back disability to his service-connected left knee disability, as well as the July 2016 VA examiner’s diagnosis of degenerative disc disease. The AOJ noted that the July 2016 VA examination report also noted reduced ranges of motion and pain on motion that resulted in functional loss. 

The Veteran’s spine disability is rated under the General Rating Formula for Diseases and Injuries of the Spine.

The General Rating Formula for Diseases and Injuries of the Spine holds that for DCs 5235 to 5243, a 10 percent rating is warranted where there is forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spine contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for lumbar spine disabilities if forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or, if the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or if the disability is manifested by muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted when forward flexion of the thoracolumbar spine is 30 degrees or less or there is favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted when there is unfavorable ankylosis of the entire thoracolumbar spine. A rating of 100 percent is warranted when there is unfavorable ankylosis of the entire spine. 

The criteria also include the following provisions:

Note (1): Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code.

Note (2): For VA compensation purposes, normal forward flexion of the cervical spine is zero to 45 degrees, extension is zero to 45 degrees, left and right lateral flexion are zero to 45 degrees, and left and right lateral rotation are zero to 80 degrees. Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the cervical spine is 340 degrees and of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion.

Intervertebral disc syndrome (IVDS) (preoperatively or postoperatively) may be evaluated either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating IDS Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined. See 38 C.F.R. § 4.25 (combined ratings table).

The Formula for Rating IVDS Based on Incapacitating Episodes provides for a 10 percent rating is warranted when there are incapacitating episodes of IVDS having a total duration of at least one week, but less than two weeks during the past 12 months. A 20 percent rating is warranted when there are incapacitating episodes of IVDS having a total duration of at least two weeks, but less than four weeks during the past 12 months. A 40 percent rating is warranted when there are incapacitating episodes of IVDS having a total duration of at least four weeks, but less than six weeks during the past 12 months. A 60 percent rating when there are incapacitating episodes of IVDS having a total duration of at least six weeks during the past 12 months. 

An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that required bed rest prescribed by a physician and treatment by a physician. An evaluation can be had either on the total duration of incapacitating episodes over the past 12 months or by combining separate evaluations of the chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities under 38 C.F.R. § 4.25, whichever method resulted in the higher evaluation.

Upon consideration of the evidence of record and the relevant laws and regulations, the Board finds that an initial 40 percent disability rating, but no higher, is warranted. 

In this regard, a March 2015 private treatment record noted that the Veteran had flexion to 25 degrees, extension from 0 to 5 degrees, and bilateral flexion and rotation to 10 degrees. 

The July 2016 VA examination report noted forward flexion to 40 degrees; however, the Veteran was not able to perform repetitive range of motion testing due to tenderness in his back. The examiner opined that the examination of the Veteran was neither medically consistent or inconsistent with the Veteran’s statements describing functional loss with repetitive use over time. The examiner explained that he was unable to say whether pain, weakness, fatigability or incoordination significantly limited the Veteran’s functional ability with repeated use because the Veteran was not having a flare-up at the time of the examination. 

The AOJ made a favorable finding that the Veteran had reduced range of motion and pain on motion that resulted in functional loss. The Board agrees and finds that the functional loss warrants a higher rating under the DeLuca provisions. 

As an initial matter, the Board notes that the Veteran’s flexion was limited to less than 30 degrees in the March 2015 treatment record, which supports a 40 percent disability rating. Further, the Board finds it probative that the Veteran was unable to complete repetitive testing due to the severity of the tenderness in the back after testing range of motion once. Given his limited motion to 40 degrees, his report of flare-ups, and this demonstrated inability to continue with range of motion testing at the examination, the Board will resolve all doubt in the Veteran’s favor and find that he is entitled to the next-higher 40 percent disability rating for the entire period on appeal, based on the DeLuca provisions. 

Based on the foregoing, the Board resolves doubt in favor of the Veteran and finds that a 40 percent disability rating is warranted. Moreover, the Board finds that the rating should be applied to the entire period on appeal as the Veteran’s range of thoracolumbar spine motion has been significantly limited for years prior to the effective date of service connection. For example, in January 2002, the Veteran had flexion limited to 40 degrees.

A rating greater than 40 percent is not warranted at any time. The next-higher 50 percent disability rating requires unfavorable ankylosis of the entire thoracolumbar spine. The July 2016 VA examiner specifically found that the Veteran does not have ankylosis. VA and private treatment records do not indicate otherwise. In this regard, any failure on the part of VA examiners to estimate additional functional loss during a flare-up is rendered moot, as the Board has granted the highest rating possible based on limitation of motion, and it is clear from the record that ankylosis does not exist.

Further, a higher rating is not warranted for IVDS at any point as the VA examiner noted that there was no indication of IVDS. See July 2016 VA examination report. Additionally, VA and private treatment records do not indicate that there was any diagnosis of IVDS or physician-ordered bedrest. The Veteran does not contend otherwise.

The Board has also considered whether the Veteran is entitled to separate compensable ratings for any neurological disorders associated with the lumbar spine disability. As discussed below, he is already in receipt of a separate compensable rating for right lower extremity radiculopathy. The Veteran has not specifically asserted that he has any additional radiculopathy or neurological disorder, other than the right lower extremity radiculopathy. 

The Board acknowledges that the Veteran also reported experiencing pain shooting from his left foot up his left leg when he first wakes in the morning and puts his foot on the floor. See July 2016 VA examination report. However, sensory testing, muscle strength testing, and deep tendon reflexes were all normal for the left lower extremity on examination. The examiner noted that the Veteran had no muscle atrophy. The examiner noted that the Veteran’s only reported radicular pain was mild numbness in the right lower extremity. The examiner found that the Veteran had no other signs or symptoms of radiculopathy other than the right lower extremity. For all of these reasons, the Board finds that a separate compensable rating is not warranted at any point for any associated neurological disorders, other than right lower extremity radiculopathy. 

In reaching these conclusions, the Board acknowledges the Veteran’s belief that he is entitled to the highest possible rating for his lumbar spine disability, for the entire period on appeal. Indeed, the Veteran’s competent and credible lay evidence regarding his symptoms and lack of ability to complete repetitive testing are the primary reason that the higher 40 percent disability rating is granted herein. To the extent the Veteran argues that a rating greater than 40 percent is warranted, for the reasons discussed above, the evidence of record does not support a finding. 

4. Entitlement to an initial rating greater than 10 percent for right lower extremity radiculopathy

The Veteran was provided with a VA examination in July 2016. At that time, the Veteran reported mild numbness in the right lower extremity. He denied having constant pain, intermittent pain, paresthesias or dysesthesias in the right lower extremity. The examiner found that the Veteran had no other signs or symptoms of radiculopathy and determined that the Veteran had mild radiculopathy in the right lower extremity. 

VA and private treatment records do not indicate symptoms worse than those reported during the July 2016 examination. The Veteran has not submitted any statements indicating that his right lower extremity disability is worse than it was during the July 2016 VA examination. For all of these reasons, the Board finds that the Veteran’s right lower extremity disability has been no worse than mild for the entire period on appeal and an initial rating greater than 10 percent is not warranted. 

In reaching this conclusion, the Board acknowledges the Veteran’s belief that his right lower extremity disability is worse than that reflected by the currently-assigned rating; however, the Veteran’s competent and credible lay evidence regarding his symptoms are outweighed by the competent and credible medical evidence that evaluates the true extent of impairment due to right lower extremity disability based on objective data coupled with the lay complaints.

REASONS FOR REMAND

1. Entitlement to service connection for residuals of rhinoplasty

In the March 2018 HLR, the AOJ noted that there were no favorable findings with respect to this claim but the Board notes that the AOJ decided the claim on the merits; therefore the AOJ appears to have found new and relevant evidence to warrant readjudication. This, in and of itself, is a favorable finding, and the Board will proceed with a merits adjudication.

The Veteran was provided with a VA examination in May 2014 to address whether any current residuals of rhinoplasty were caused or aggravated by service. For the following reasons, the Board finds that the May 2014 VA opinion was inadequate and constituted a pre-decisional duty to assist error. 

Generally, a veteran is presumed to be in sound condition when examined and accepted into service except for defects or disorders noted at that time. 38 U.S.C. § 1111. The presumption is rebutted where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. “[T]he Government must show clear and unmistakable evidence of both a preexisting condition and a lack of in-service aggravation to overcome the presumption of soundness...” Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); see VAOPGCPREC 3-2003 (July 16, 2003) (cited at 69 Fed. Reg. 25,178 (May 5, 2004)).

In this case, the Veteran’s service entrance examination did not note any nasal disorder. See January 1967 entrance examination. Thus, the presumption of soundness attached and is only rebutted by clear and unmistakable evidence of the preexisting disability and clear and unmistakable evidence that it was not aggravated by service. 

The May 2014 VA examiner noted that there was clear and unmistakable evidence that the Veteran’s rhinoplasty disorder preexisted service but the examiner did not provide the basis for the statement. The Board acknowledges that the Veteran reported in his service entrance report of medical history that he had nasal surgery as a child and subsequent service treatment records also note the Veteran’s reports of having nasal surgery when he was 6 or 7. However, actual treatment records of the same are not of record. Thus, the examiner needed to explain the basis for the finding that there was clear and unmistakable evidence of the preexisting disorder. 

Further, the May 2014 VA examiner did not apply the proper standard in discussing whether any preexisting disorder was aggravated by service. As noted above, in order to overcome the presumption of soundness, in addition to finding clear and unmistakable evidence that the disorder preexisted service, it must be shown by clear and unmistakable evidence that the disorder was not aggravated in service. Here, the May 2014 VA examiner simply opined that the Veteran’s preexisting nasal condition was not aggravated beyond its natural progression. As the Veteran underwent rhinoplasty surgery in service, an explanation was needed to address whether any preexisting disorder was not clearly and unmistakably aggravated beyond its natural progression. 

For these reasons, the AOJ should obtain an advisory medical opinion to correct the pre-decisional duty to assist error.

2. Entitlement to service connection for ulcerative colitis 

The Veteran asserts that his ulcerative colitis is caused or aggravated by medications used to treat his service-connected left knee disability. As discussed above, the claim warrants readjudication based on receipt of new and relevant evidence. Because the AOJ did not find that new and relevant evidence was received, the AOJ has not yet adjudicated the claim on the merits. Thus, a remand for initial adjudication on the merits is necessary, as the Board is prevented from doing so in the first instance. Indeed, the Veteran has a procedural right to have one review of his appeal by the Secretary under 38 U.S.C. § 7104(a), and AMA amendments do not specifically revoke that right. 

3. Entitlement to an initial rating greater than 50 percent for an acquired psychiatric disorder other than PTSD.

The Board has herein granted an earlier effective date for the acquired psychiatric disorder other than PTSD and the AOJ has not yet had the opportunity to assign an initial rating for the period prior to February 11, 2015. Further, the Board has also granted service connection for PTSD and the AOJ has not yet had the opportunity to assign a rating for PTSD, which may include overlapping symptoms and a single psychiatric disorder rating. As noted above, the Veteran is entitled to one review of his appeal by the Secretary under 38 U.S.C. § 7104(a), and the Board cannot address the propriety of the rating for his non-PTSD symptoms before VA rates his PTSD in the first instance. Indeed, the Board’s determinations above have created downstream rating issues that must be initially addressed by the AOJ. 

4. Entitlement to a total disability rating due to individual unemployability prior to April 6, 2018 is remanded.

The claim for a TDIU was raised as part and parcel of the appeal for a higher rating for the Veteran’s acquired psychiatric disorder. The January 2019 private psychologist opined that the Veteran’s PTSD and depression rendered him totally occupationally impaired. See Rice v. Shinseki, 22 Vet. App. 447 (2009) (holding that a request for TDIU is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication of a claim or as part of a claim for increased compensation).

The Veteran has recently been awarded a total schedular rating, effective April 6, 2018, as well as an award for special monthly compensation (SMC) at the housebound rate effective the same date. Accordingly, the question of whether a TDIU can be awarded after April 6, 2018 is moot. However, prior to April 6, 2018, the issue remains on appeal as tied to the Veteran’s pending increased rating claim. As discussed above, on remand, the AOJ must rate PTSD in the first instance, and readjudicate the increased rating claim for his other psychiatric disabilities (to include assigning an initial rating based on the Board’s award of an earlier effective date herein). The AOJ has not adjudicated entitlement to a TDIU within the context of his claim for a higher psychiatric disability rating in the first instance, and the issue must be remanded in kind. 

The matters are REMANDED for the following action:

1. The AOJ should obtain a VA addendum opinion to address whether the Veteran’s current residuals of rhinoplasty are related to service. The Board leaves it to the discretion of the clinician who offers the opinion to determine whether the Veteran needs to be reexamined. Following review of the complete electronic file, the examiner is asked to address the following. 

(a.) Did the Veteran’s nasal disorder clearly and unmistakably preexist the Veteran’s active duty military service? Consider that no nasal disorder was noted on the January 1967 Report of Medical Examination. If there is clear and unmistakable evidence that a nasal disorder preexisted service, please identify the evidence. 

(b.) If the answer to question (a) is “yes” is there also clear and unmistakable evidence that the nasal disorder was NOT permanently aggravated beyond its natural progress during service? Consider that the Veteran underwent rhinoplasty during service. 

(c.) If the answer to either question (a) or (b) is “no,” assume as true that the Veteran did not enter service with the disability. With this assumption in mind, is it at least as likely as not (i.e. a 50 percent or greater probability) that the Veteran’s nasal disorder had its onset in service, or is otherwise related to active service?

(d.) The examiner must provide complete rationale for the conclusions reached.

2. As the Board has found that new and relevant evidence has been received in support of the Veteran’s previously-denied service connection claim for ulcerative colitis, readjudicate the appeal on the merits. 

3. Assign an initial rating for the Veteran’s now service-connected PTSD, and readjudicate intertwined issues of entitlement to a rating greater than 50 percent for an acquired psychiatric disability other than PTSD, to include entitlement to a TDIU prior to April 6, 2018. 

 

V. Chiappetta

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Donna D. Ebaugh, Counsel